Application of UNIVERSAL OIL PRODUCTS COMPANY.

Application of UNIVERSAL OIL PRODUCTS COMPANY.

**Patent Appeal Nos. 8906 and 8933.**

United States Court of Customs and Patent Appeals.

April 19, 1973.

John T. Lanahan, Des Plaines, Ill., of record, for appellant; Sidney W. Russell, Arlington, Va., of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents; John W. Dewhirst, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN and LANE, Judges, and AL-MOND, Senior Judge.

RICH, Judge.

These consolidated appeals are from decisions of the Patent Office Trademark Trial and Appeal Board affirming the examiner's refusal to register two word marks for services. We affirm.

No. 8906 [1] involves the mark PACOL [2] sought to be registered for "research, development, evaluation, market and economic studies, consultation, design, engineering, and technical services in connection with a process for the dehydrogenation of normal paraffins" in Class 100 and for "construction, installation, operation and servicing for others of a process for the dehydrogenation of normal paraffins" in class 103.

No. 8933 [3] involves the mark PENEX [4] sought to be registered for "research, development, evaluation, market and economic studies, consultation, design engineering and technical services for others in connection with an isomerization process."

The applicant, Universal Oil Products Company, is the same in each case and the evidence it supplied to support the applications is in large part identical. The same legal issues are present in the two appeals. The board decision in PENEX was rendered two months after the decision in PACOL and largely relies thereon for support.

Refusal of registration for both marks was on the ground that the specimens did not evidence use thereof to identify *the services* named in the applications. The specimens filed demonstrate that PACOL is used by appellant as the name of a *process* for converting n-paraffins to corresponding n-olefins by direct catalytic dehydrogenation and that PENEX is used as the name of a *process* for the continuous catalytic isomerization of normal pentane and hexane and mixtures thereof. In each case one specimen is a 12-page brochure entitled "UOP Processing Guide" which describes briefly the PACOL and PENEX processes as well as eleven other processes of "UOP." Nowhere in this brochure, however, is there a reference to PACOL or PENEX services. The back page of the brochure is headed "WHAT'S YOUR PROBLEM?" and contains a column of description under the subheading "UOP's engineering, technical and marketing services are available to help you find the answer." There is no question but that it shows appellant to be in the business of rendering such services. Particularly relied

1. Opinion below reported at 167 USPQ 245.

2. Application serial No. 274,562, filed June 22, 1967.

3. Opinion below abstracted at 167 USPQ 576.

4. Application serial No. 302,157, filed July 5, 1968.

on are the statement in the subheading, just quoted, and the statements thereunder that

> UOP is equipped to design and build any plant incorporating any of its processes and to train refinery personnel for its operation and maintenance. * * *

> Additionally, UOP offers economic, marketing, and management services to the petroleum industry—* * *.

The essence of the argument in these appeals is that appellant would have us rule that the use of the marks sought to be registered on processes which, presumably, it licenses others to use, coupled with its rendition of services, constitutes use of PACOL and PENEX as service marks under the law.

■■■■ Section 3 of the Lanham Act (15 U.S.C. § 1053) provides for the registration of "service marks." Section 45 (15 U.S.C. § 1127) defines "service mark" as "a mark used in the sale or advertising of services to identify the services of one person and distinguish them from the services of others." The Patent Office position is that, so far as the records in these appeals show,[5] neither PACOL nor PENEX has been so used. We see no error in that conclusion. The requirement that a mark must be "used in the sale or advertising of services" to be registered as a service mark is clear and specific. We think it is not met by evidence which only shows use of the mark as the name of a *process* and that the company is in the business of rendering services generally, even though the advertising of the services appears in the same brochure in which the name of the process is used. The minimum requirement is some direct association between the offer of *services* and the mark sought to be registered therefor. See Ex parte Phillips

Petroleum Co., 100 USPQ 25 (Com'r. Pats.1953). There is no evidence of such association before us. The advertising of the services is under no mark at all and is in a brochure offering to license or install processes bearing a dozen or more different names.

■■■■ Appellant would have us hold that "the *association* of services with a name of a process" is sufficient to warrant registration of that name as a service mark. The argument starts from the premise that PACOL and PENEX *are* process names rather than marks associated with services. The proposition put to us is that the names of processes ought to be registrable as "service marks" under the Lanham Act. The tenuous reasoning in support of this proposition is based on dictum in In re Radio Corporation of America, 205 F.2d 180, 40 CCPA 1025 (1953), where this court, in discussing registration of the slogan "The Music You Want When You Want It," said:

> We believe it equally true that Congress intended a service mark to function in such a fashion as to identify and distinguish those things of an intangible nature, such as services, in contradistinction to the protection already provided for the marks affixed to those things of a tangible nature such as goods and products.

From this statement appellant argues that service mark registration was set up "not for services alone, but for 'intangible things'," that a process is an intangible thing, therefore, a mark or name used for a process should be registrable as a service mark.

We reject this argument. Whatever the court in the *Radio Corporation* opinion may have intended, we are sure it was not that every mark used in connection with an intangible is registrable as

---

5. Appellant's brief states that in another application to register PENEX as a service mark a specimen therein includes the statement "Penex and Platforming engineering, technical, and marketing services are available upon request," and that the application was approved. The Patent Office brief confirms that registration No. 940,145 was issued thereon on Aug. 1, 1972. The solicitor says this merely "highlights the deficiency in the cases on appeal."

a service mark. No such question was under consideration and the next sentence of the opinion is, "Clearly had Congress intended service marks to apply to *goods or products*, we believe it would have so stated." (Emphasis ours.) The discussion was whether the slogan was being used on a radio program or to promote the sale of RCA Victor Red Seal Records. The court held it was being used to promote the sale of records—tangible things—and was therefore not registrable as a service mark and affirmed the Patent Office.

It is clear enough to us that a "process," per se, is not a "service." A process can be carried out for oneself or for others; it can be licensed to others to carry out for themselves, which appears to be what UOP does. Carrying out a process for others could be rendering a service as, for example, operating a laundry. But that is not the kind of thing UOP does. It helps others to carry out processes but in so doing or in advertising its willingness to do so in the specimens of record it has not associated PACOL or PENEX with its services. Direct association is the minimum it must show.

The decisions of the board in both appeals are affirmed.

Affirmed.